## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MAJESTIC HOLDCO, LLC, et al., | ) Case No. 09-14142 (KG) |
| | ) (Jointly Administered) |
| Reorganized Debtors. | ) |
| | ) **Re: Case No. 09-14136** |
| | ) **Dkt. Nos. 1556; 1557** |
| | ) **Case No. 09-14142** |
| _____ ) | **Dkt. Nos. 26; 28** |

### OPINION

The Court has before it Entergy Mississippi, Inc.'s ("Entergy") Motion for Enlargement of Time to File Proof of Claim ("Motion for Enlargment") (D.I. 1556), Entergy's Motion for Enlargement of Time and Payment of an Administrative Expense ("Motion for Enlargement of Administrative Claim") (collectively, "Motions to Enlarge") (D.I. 1557), the Reorganized Debtors' combined Response (D.I. 26), and Entergy's Reply (D.I. 28). Entergy, a utility-provider and creditor, moves for leave to file two proofs of claim long after the Bar Dates, and argues leave should be granted due to excusable neglect. The facts are virtually uncontested. After reviewing the submissions and following a January 28, 2013, hearing, the Court finds that Entergy did not prove by a preponderance of the evidence the *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership*[1] excusable neglect factors. Therefore, the Court will deny Entergy's Motions to Enlarge.

---

[1] 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

JURISDICTION

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. § 1409.

BACKGROUND

On November 23, 2009, Majestic Holdco, LLC, along with other, related debtors whose cases are now closed, filed Chapter 11 petitions in this Court. (D.I. 1, 2). On November 2, 2010, the Court entered an order establishing January 4, 2011 as the pre-petition proofs of claim Bar Date. (D.I. 707). On November 10, 2010, the Debtors notified more than 11,000 parties in interest and potential claimants, including Entergy, of the Bar Date. (D.I. 721). Entergy admits it timely received notice of the Bar Date. (D.I. 1556). On January 12, 2011, the Debtors filed their Second Amended Chapter 11 Plan (the "Plan"). (D.I. 859). On March 10, 2011, the Court entered an order confirming the Plan (D.I. 1059), which took effect on December 1, 2011. (D.I.1376). The Plan's Article II required full payment of allowed administrative claims. (D.I. 859 at 20). The Plan's Article XI(B) required all administrative proofs of claim to be filed forty-five (45) days after the Plan's effective date (D.I. 859 at 65), i.e., by January 15, 2012. This date was changed to January 18, 2012. (D.I. 1376). If allowed, the administrative payment claims will be paid in full.

FACTS

On December 7, 2001, Entergy and Barden Mississippi Gaming, LLC ("Barden"), a Debtor subsidiary, entered into a still-existing service agreement whereby Entergy provides electricity to Barden's Robinsville, Mississippi casino (the "Casino"). (Affidavit of Wayne Spall, dated Sept. 5, 2012, at ¶2) ("Spall Aff."). On April 7, 2003, Entergy installed a new electric meter to measure the

2

Casino's power consumption. (Spall Aff. at ¶3). Nine years later, on or about April 17, 2012, Entergy discovered meter-reading errors at an identical meter at a different site. (Spall Aff. at ¶3). After noticing these errors, Entergy performed a non-standard test on the Casino's meter, discovering the meter had under-represented the Casino's electricity usage since installation. (Spall Aff. at ¶3). Thus, for nine years, Entergy undercharged the Casino a total of $1,102,864.09 for electricity. (Spall Aff. at ¶4). Due to its error, Entergy manually audited all of Barden's invoices, resulting in a five month delay in filing its Motions to Enlarge. (D.I. 28 at 7).

On September 6, 2012, Entergy moved for enlargement of time to file a proof of claim for: $421,417.23 in pre-petition reimbursement for the three years immediately preceding the Debtors' petition date. Mississippi's three-year statute of limitations[2] prevents Entergy from seeking all of its losses. Entergy also asks for leave to file a claim for $218,670.39 in post-petition administrative expenses. The following chronology which is undisputed clarifies the circumstances.

- April 7, 2003 - Entergy installed a meter at Barden's Casino (D.I. 1556)

- November 23, 2009 - Debtors' Petition Date (D.I. 1)

- November 23, 2009 - Debtors' Motion for Entry of Interim and Final Orders Determining Adequate Assurance of Payment for Future Utility Services (D.I. 6)

- December 17, 2009 - Stipulation between Entergy and Debtors re: Adequate Assurance of Payment for Future Utility Services (D.I. 116)

- January 4, 2011 - Bar Date for Pre-Petition Claims (D.I. 707)

- February 25, 2011 - Cure Notice (D.I. 992)

---

[2] MISS.CODE.ANN. 15-1-49(1) ("All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after."). Entergy argues that the statute of limitations is not applicable to the administrative claim. The Court will not address the issue because the absence of excusable neglect ends the inquiry.

3

- March 11, 2011 - Plan's Confirmation Date (D.I. 1059)

- December 1, 2011 - Effective Date of the Plan (D.I. 1376)

- January 18, 2012 - Bar Date for Administrative Claims (D.I. 1376)

- April 17, 2012 - Entergy discovers the meter's error (D.I. 1556)

- September 6, 2012 - Entergy files its motions (D.I. 1556; 1557)

- September 27, 2012 - Order and Final Decree Closing Certain Chapter 11 Cases (D.I. 1569)

## DISCUSSION

Under Federal Rule of Bankruptcy Procedure 9006(b), the Court has authority to grant an enlargement of time after a specified period expires where the failure to act was the result of excusable neglect.[3]  Excusable neglect applies to Chapter 11 cases.[4]  As the moving party, Entergy must prove excusable neglect by a preponderance of the evidence.[5]

Entergy admits that the Motions to Enlarge are late-filed, but asserts its neglect is excusable because it discovered the malfunctioning meter after the Bar Date and only after it discovered a problem with a similar meter.  Entergy also argues it has suffered tremendous financial loss and should be allowed to file its late claims to collect what it can.[6]  The Debtors argue Entergy's neglect

---

[3] Fed. R. Bankr. P. 9006(b)(1) ("[T]he Court . . . may at any time in its discretion on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.").

[4] *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

[5] *In re Cable & Wireless USA, Inc.,* 338 B.R. 609, 613 (Bankr. D. Del. 2006).

[6] Entergy claims the meter's failure, Mississippi's statute of limitations and its anticipated low pre-petition claim payout result in an $850,000 loss out of the $1,102,864.09 total.

4

is of its own doing, and while unfortunate, is not excusable.

In *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership*, the United States Supreme Court listed four factors courts must consider in determining whether excusable neglect exists:  (1) the danger of prejudice to the Debtor; (2) the length of the delay and its effect on court proceedings; (3) the reason for the delay, including whether the delay was within the movant's reasonable control; and (4) whether the movant acted in good faith.[7]  No one factor trumps the others, and the Court must examine and balance all four factors.[8]

Prejudice

Entergy's late-filed proofs of claim, if allowed, prejudice the Debtors.  In *In re O'Brien Environmental Energy, Inc.*, the Third Circuit listed factors to consider in deciding prejudice, including:

> The size of the claim with respect to the rest of the estate; whether allowing the late claim would have an adverse impact on the judicial administration of the case; whether the plan was filed or confirmed with knowledge of the existence of the claim; the disruptive effect that the late filing would have on the plan or upon the economic model upon which the plan was based; and whether allowing the claim would open the floodgates to other similar claims.[9]

Entergy's pre-petition claim is $421,417.23 and its administrative payments claim is $218,670.39.  While Entergy's pre-petition claim may only generate pennies on the dollar, its administrative payments claim, if allowed, must be paid in full.  These claims have an adverse

---

[7] *Pioneer,* 507 U.S. at 395.

[8] *Id.*

[9] *In re O'Brien Environmental Energy, Inc.,* 188 F.3d 116, 126 (3d Cir. 1999).

5

impact on the case administration and may affect payments to other creditors.

Entergy has been involved in this case from the beginning.  It received notice of both Bar Dates.  The Debtors filed their reorganization plan without knowledge of any additional Entergy claims.  Entergy's late claims affect the prior negotiations and would require litigation over the claims' validity.[10]

The fact that the proceedings are at their waning stage also weighs against allowing the claims.  As stated above, Debtors' reorganization plan took effect on December 1, 2011. Entergy filed its motion on September 6, 2012, more than eighteen (18) months after the Debtors' plan was confirmed, and three weeks before most of the Debtors' cases were closed. (D.I. 1569).  Moreover, the Debtors already negotiated an aggregate unsecured claims pool of $1 million from which creditors' unsecured claims would be paid.  Adding Entergy's $421,417.23 claim to the pool reduces the amount of money available to other unsecured creditors.

Lastly, Entergy's claims would not open the floodgates and expose the Debtors to other claims, as the Debtors argue.  Entergy's situation is unique, stemming from malfunctioning equipment.  This is not a situation where a creditor learned of its claim before the Bar Date, yet filed it after the Bar Date.[11]  Although Entergy's delay would not open the floodgates to other claims, its late-filed claims prejudice the Debtors.

---

[10] *See In re Smidth & Co., Inc.*, 413 B.R. 161, 167 (Bankr. D. Del. 2009) ("[A]llowing the late claim would adversely impact the judicial administration of this case, the second *O'Brien* factor. The Debtor has worked diligently toward the resolution of the case . . .. Allowance of this claim provides more than an additional financial burden on the estate, it also would necessitate extensive litigation to determine the validity of the claim and liquidate it.").

[11] *In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 53 (Bankr. D. Del. 2012) ("Despite learning of her claim sometime in 2010, [the movant] waited until July 2011 to file a proof of claim.").

<u>Length of the Delay</u>

Entergy's lengthy filing delay weighs heavily against it. Courts should view the length of the delay in absolute terms.[12] On September 6, 2012, Entergy filed its Motions to Enlarge. As discussed above, the Court established January 4, 2011 as the pre-petition claims Bar Date and January 15, 2012 as the administrative payment claims Bar Date. Thus, Entergy filed its pre-petition claim twenty (20) months after the Bar Date and filed its administrative payment claim nearly eight (8) months after the Bar Date. While Entergy's late filings do not automatically bar its claims, the delay certainly weighs against finding excusable neglect.[13]

Adding insult to injury, Entergy did not file the Motions to Enlarge until five months had passed from discovering the meter malfunction. What is especially egregious is that Entergy took more time from discovery to filing five months versus 45 and 60 days, the bar dates the Court set for pre-petition and administrative claims, respectively.[14] Moreover, the Court confirmed the Debtors' plan for reorganization on March 1, 2011,[15] and most of the Debtors' cases were closed on September 27, 2012.

---

[12] *In re O'Brien Environmental Energy, Inc.,* 188 F.3d 116, 130 (3d Cir. 1999).

[13] *See in re Goody's Family Clothing Inc.,* 443 B.R. 5, 16 (Bankr. D. Del. 2010) ("[T]he true length of the delay was roughly 5 months. Courts have held that comparable delays weigh against the movant."). *See also In re Cable & Wireless USA, Inc.,* 338 B.R. at 616 ("[Movant's] delay is substantial, as the request to file a late proof of claim comes over one year after the . . . bar date."). *But see In Re Garden Ridge Corp.,* 348 B.R. 642, 646 (Bankr. D. Del. 2006) ("[Movant filed] a proof of claim . . . seven days after the bar date.").

[14] Fed. R. Bankr. P. 3003(c)(3) ("The court shall fix and for cause shown may extend the time within which proofs of claim . . . may be filed . . ..").

[15] *In re Goody's Family Clothing Inc.,* 443 B.R. at 16 ("[T]he delay takes on added significance when a plan of reorganization was confirmed in the interim.").

7

### Reason for the Delay

Entergy's explanation for its delay weighs against finding excusable neglect.  Entergy admits it installed the malfunctioning meter and had sole control over its operation.  Thus, for nine years, it was in the best position to control, monitor, and fix the meter.  This control of the meter and the failure to monitor it, when combined with Entergy's delay, make a powerful case against allowing the late-filed claims.[16]

### Good Faith

The Debtors do not claim that Entergy filed its claim in bad faith.  The Court agrees, and finds that Entergy filed its claim in good faith.

### CONCLUSION

After weighing the *Pioneer* factors, the Court finds that Entergy did not prove, by a preponderance of the evidence, that its late filing was the result of excusable neglect.  Entergy's Motions to Enlarge are therefore DENIED.

Dated:  February 21, 2013

KEVIN GROSS, U.S.B.J.

---

[16] *See In re Cable & Wireless USA, Inc.,* 338 B.R. at 617 (finding a movant's excuse that it has a high volume of customers, and therefore, a high volume of tax forms to examine, was unpersuasive in its support of an excusable neglect finding.  The movant had notice of the Bar Date.).